STATE of Tennessee, Appellee,

v.

**Ronnie Dale OLLER, Appellant.**

Court of Criminal Appeals of Tennessee,
at Nashville.

Oct. 29, 1992.

Permission to Appeal Denied by
Supreme Court Feb. 1, 1993.

Jeffrey A. DeVasher, Sr. Asst. Public
Defender, Nashville, for appellant.

Charles W. Burson, Atty. Gen., and Rose
Mary Drake, Sp. Asst. Atty. Gen., Victor S.
Johnson, III, Dist. Atty. Gen., Roger
Moore, Asst. Dist. Atty. Gen., Nashville,
for appellee.

OPINION

HOUSTON M. GODDARD, Special
Judge.

Ronnie Dale Oller appeals a judgment of
the Criminal Court for Davidson County
which, pursuant to a jury verdict, found
him guilty of the following offenses: (1)
murder in the first degree; (2) especially
aggravated burglary; and (3) especially ag-
gravated robbery. He also appeals the
sentences imposed pursuant thereto of life
imprisonment as to his conviction of first
degree murder, 10 years as to his convic-
tion of especially aggravated burglary, and
20 years as to his conviction of especially
aggravated robbery. The latter two sen-
tences were to be served concurrently with
each other, but consecutively to the life
sentence.

He raises the following three issues on
appeal:

ISSUE I.

DID THE TRIAL COURT ERR IN DE-
NYING THE DEFENDANT'S MOTION
FOR JUDGMENT OF ACQUITTAL ON
THE OFFENSES OF AGGRAVATED
BURGLARY AND ESPECIALLY AG-
GRAVATED ROBBERY?

ISSUE II.

DID THE TRIAL COURT ERR IN DE-
NYING DEFENSE COUNSEL'S MO-
TION FOR A MISTRIAL DUE TO A
VERBAL OUTBURST DURING THE
DEFENDANT'S TESTIMONY BY A
SPECTATOR ASSOCIATED WITH THE
VICTIM'S FAMILY?

### ISSUE III.

DID THE TRIAL COURT ERR IN IM-
POSING PARTIAL CONSECUTIVE
SENTENCES?

There is evidence in the record from which a rational trier of fact could find the following. Dr. Gul Telwar, a professor at Tennessee State University and the owner of a used car lot in Nashville, was killed on March 17, 1990, at his place of business by a former employee, Harry Blandford, who had broken into the office of the used car establishment at about 7:00 a.m. prior to Dr. Telwar's arrival.

The murder resulted from a plan devised by Mr. Blandford and the Defendant the night before where they plotted to shoot Dr. Telwar and steal keys from three automobiles, and later the automobiles, which were unencumbered. Pursuant to this plan, the Defendant and his wife and Mr. Blandford drove from the Defendant's home in Bowling Green, Kentucky, to the used car establishment. Mr. Blandford was let out of the car and, as already noted, broke into the establishment prior to Dr. Telwar's arrival. The Defendant circled the building a number of times until Dr. Telwar arrived and until he was shot eight times by Mr. Blandford with a pistol owned and furnished by the Defendant. The Defendant thereupon picked up Mr. Blandford and they returned to Bowling Green and attempted to destroy incriminating evidence—pistol, clothing, shoes and Dr. Telwar's billfold and contents.

The break-in netted the three car keys heretofore mentioned, as well as some $60 taken from Dr. Telwar's wallet, $20 of which was given to the Defendant.

The jury was charged as to the provisions of T.C.A. 39–11–402(2) and obviously convicted the Defendant pursuant thereto.[1]

■ As to the first issue, the Defendant makes the following insistence:

The Defendant Cannot Be Convicted Of Offenses Which Are Statutorily Enhanced By The Element of "Serious Bodily Injury" To The Victim When The Defendant Has Been Convicted Of The Murder Of The Victim In The Same Criminal Episode.

The Defendant cites in support of his argument, *State v. Lambert,* 741 S.W.2d 127 (Tenn.Crim.App.1987), and *State v. Gann,* unreported opinion of the Court of Criminal Appeals, filed in Nashville on October 13, 1989, 1989 WL 119469. We have reviewed both cases and find that they are inapposite.

In both cases, this Court was construing sentencing Statutes dealing with statutory factors used to enhance sentences within the sentencing range provided by law. It ruled that, for sentencing purposes, enhancement factors which are essential elements of the crime may not be used to increase a sentence. See T.C.A. 40–35–114. *Lambert* and *Gann* did not hold that separate convictions are barred simply because the offenses have a common element which, itself, is used to prove another crime—in this case, murder.

In this regard, the Defendant apparently contends that the State should be prohibited from obtaining convictions for separate offenses which are committed in the same criminal episode and for which each offense requires proof that the victim suffered serious bodily injury, citing *State v. Anthony,* 817 S.W.2d 299 (Tenn.1991) (due process prohibits separate convictions for armed robbery and aggravated kidnapping growing out of single episode when kidnapping was essentially incidental to the robbery). However, a significant distinction between this case and *Anthony* is that, in *Anthony,* the Supreme Court was concerned about the fact that proving one felony, the armed robbery, inherently and necessarily proved the elements of the second felony, kidnapping. On the other hand, in this case, proving the elements of any of the alleged

---

1. *39–11–402. Criminal responsibility for conduct of another.*—A person is criminally responsible for an offense committed by the conduct of another if:

. . . .

(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense. . . .

offenses would not inherently or necessarily prove the elements of either of the other two offenses. *Anthony* does not apply in this case.

■ Also, the Defendant contends that the Statute defining especially aggravated burglary bars his being convicted for both that offense and especially aggravated robbery. He relies upon the following language in T.C.A. 39–14–404(d) dealing with especially aggravated burglary:

> Acts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both.

This Subsection prohibits using the same act to prosecute an accused for both especially aggravated burglary and another offense. In this case, the act of killing the victim constituted the "serious bodily injury" which would enhance the burglary offense to an especially aggravated one. However, by virtue of the Defendant's prosecution and conviction for murder, Subsection (d) proscribes the prosecution and conviction for *especially* aggravated burglary. Accordingly, the conviction under Count 3 is reduced to burglary, a Class D felony, for which we impose a two-year sentence.

As to the second issue, the following is the evidence relative to the "verbal outburst" during the Defendant's testimony:

> (WHEREUPON, at this point, there was a disturbance from a spectator in the gallery, after which the following proceedings were had:)
>
> THE COURT: All right, we are going to have to clear the gallery.
>
> GENERAL MOORE: I'm sorry, Your Honor.
>
> THE COURT: That's all right. Just disregard that, folks.
>
> . . . .
>
> (Six pages later in the transcript)
>
> MS. FUTTER: Your Honor, at this time, I would make a motion for a mistrial.
>
> THE COURT: You are untimely. I will hear you on it when the jury is out. It is untimely.

> (WHEREUPON, said bench conference having been completed, the following proceedings were had in the presence and hearing of the jury:)
>
> THE COURT: All right, Mr. Oller. You may step down, and resume your former seat.
>
> (WITNESS EXCUSED)
>
> (WHEREUPON, the morning recess was taken, and the jury excused from the courtroom, and the following proceedings were had out of their presence and hearing:)
>
> THE COURT: All right. The jury is out of the courtroom. General, do you happen to know the identity of the woman who spoke from the gallery?
>
> GENERAL MOORE: Judge, I didn't look around. I didn't want to draw anymore attention to it. I didn't look around. I can ask. I'm pretty sure it is probably one of the doctor's sisters or daughters. If Your Honor would like, I will step out and ask.
>
> THE COURT: Well, I don't know. I'm not going to let her come back in for further proceedings regardless, but I am going to instruct the remaining individuals in the gallery that there is to be no further demonstration in response to any testimony, whether it be testimony that you like, dislike, whatever. The remark that there has not been justice, that kind of demonstration is precisely the way to make sure that there is not justice, and it is highly uncalled for, and could be the result now of a contempt adjudication on the part of the woman who did it since it was after my Court Officer was trying to subdue her. Now the jury's attention was not drawn to it until she began to exit and made the remark, and there has been a motion for a mistrial, and I'm going to have a hearing on that here in just a moment. But the consequences of that kind of thing can be extremely serious. While I understand that this is an emotional situation, this is not the place to demonstrate it, and if you feel you are losing control or whatever, then just discreetly, quietly step out and stay out.
>
> All right, Ms. Futter.

MS. FUTTER: Based on the situation that happened, I believe that—my back was to the lady, but I do believe as she exited, she made an outburst that she was looking for justice, and I believe that that would be a basis for influence on the jury, and I would make a motion for a mistrial at this point. It is not part of the case here. I believe that it would be an improper influence on the jury to believe that they are not going to get justice based on what is here, and the jury has to go beyond either the testimony here or beyond the law that Your Honor is going to instruct in order for Mr. Oller to get justice, so I would at this time make the motion.

I did not—the only thing that I indicate, I guess I would make a proffer on what I saw. My understanding is that—

THE COURT: I'm going to describe it for the record, and then if you want to add anything to it, or clarify it, or disagree with it, or whatever, you may do so.

MS. FUTTER: Your Honor, I think you probably saw more than I did, because I was focusing on Mr. Oller.

THE COURT: All right. Fortunately so was the jury. What did take place to the extent that I saw it was that the lady who has been here throughout, and I don't know if she is a daughter or a sister or what, but I think it is fair to assume that she is of some kin, began communicating with the lady seated with her in a rather agitated fashion, although in low enough voices that it did not distract the jury, and I don't know what was being said. I think the lady beside her was trying to get her to stop talking.

Then the Court Officer stepped over, either to ask her to stop talking and/or to ask her to leave. I'm not sure which. Either would be consistent with the duties assigned to him, and at that point, she expressed resistance to his instruction, and created enough of a commotion that it was at that point that the jurors began to look over at her. And I asked the witness to stop talking since their attention was away from him.

As she walked out, she made some remark about she wanted justice. And I don't know if she said she has not gotten it, or couldn't get it, or what it was. I'm not sure what it was. I instructed the jurors to disregard it, and we went back to the proceedings, and she will not be allowed back in the courtroom, and the others in the gallery have been instructed as to how to behave or conduct themselves.

Did you want to make any response to the motion?

GENERAL MOORE: No, Your Honor, other than I think Your Honor's cautionary instruction or instructions to the jury, I think it would go without saying that people's common understanding as the jurors, especially in a case of this magnitude, would obviously know that it is a serious matter, and one that families and people involved would have strong emotions, but I think, given the brevity of it and Your Honor's instructions, that a mistrial at this point would not be warranted.

THE COURT: All right. I think, although I certainly wish it hadn't happened, I think that it was both in duration and in content was not sufficient to warrant a mistrial, particularly in light of the contemporaneous instruction, and the fact that I will ultimately instruct the jury that they cannot be swayed by prejudice or sympathy; however, there, I think, potentially would be a cumulative effect from that type of thing, and so I expect there to be no further problems whatsoever.

I initially characterized the motion as untimely, and I wish it had been contemporaneous so that we could have discussed how to respond to it; however, I think overall that it is better to have made as little of it as possible, and just moved on, which is what everybody did. So I have considered the motion, but do respectfully deny it.

■ While it is most likely that the outburst was by a member of the victim's family, although our reading of the record does not make this absolutely certain, there

is no evidence that such a relationship would have been known to any member of the jury. Additionally, we have concluded that the error was harmless beyond a reasonable doubt and that the proof of the Defendant's guilt as to all convictions is overwhelming.

■ By his last issue, the Defendant insists that the Trial Court was in error in making the sentences for especially aggravated burglary and especially aggravated robbery, which were concurrent with each other, consecutive to the sentence of murder in the first degree. Our review of the Trial Court's sentencing is, of course, *de novo*, with a presumption of correctness. T.C.A. 40–35–401(d).

The Trial Court's action was predicated upon its finding that the Defendant was a dangerous offender, as defined under T.C.A. 40–35–115(b)(4) and *Gray v. State*, 538 S.W.2d 391 (Tenn.1976).

The record supports the following statement found in the State's brief:

> This was a defendant who was involved in a premeditated murder after four prior felony convictions, had previously been given the opportunity for rehabilitation through probation and parole, who had additional charges pending against him, and, as is evidenced by the videotape introduced at the sentencing hearing, someone proud of being a professional criminal.

The evidence does not preponderate against the Trial Judge's finding that the Defendant "has no concern, no regard for human life, and is a dangerous offender," and justified her imposing partially consecutive sentences.

In accordance with our disposition of issue one we remand the case to the Trial Court for entry of an appropriate judgment as to the burglary conviction which will run consecutively to the murder conviction and concurrently with the sentence for especially aggravated robbery.

WADE and TIPTON, JJ., concur.