# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1998

FILED

July 23, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9706-CR-00229** |
| | ) | |
| Appellee, | ) | |
| | ) | **WILSON COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. JIMMY C. MARTIN, JUDGE** |
| **MELISSA J. PEWITT,** | ) | |
| | ) | |
| Appellant. | ) | **(Especially Aggravated Burglary)** |

<u>FOR THE APPELLANT:</u>          <u>FOR THE APPELLEE:</u>

**B. KEITH WILLIAMS**
TAYLOR, TAYLOR,
LANNOM & WILLIAMS
102 East Main Street
Lebanon, TN  37087

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELLEN H. POLLACK**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**TOM P. THOMPSON**
District Attorney General
111 Cherry Street
Lebanon, TN  37087

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Melissa J. Pewitt, appeals as of right from her conviction in the Criminal Court of Wilson County. Following a jury trial, she was convicted of especially aggravated burglary. In her appeal, the Defendant presents the following issues:

> 1) Whether the evidence was sufficient to sustain a guilty verdict on the charge of especially aggravated burglary;
>
> 2) Whether the trial court erred in allowing the admission of photographs of the victim's injuries which unfairly prejudiced and inflamed the jury;
>
> 3) Whether the trial court erred in allowing the jury to consider a charge of an incidental crime in violation of the Defendant's due process rights;
>
> 4) Whether the trial court erred in allowing the jury to consider the charge of aggravated assault in addition to the charge of especially aggravated burglary; and
>
> 5) Whether the trial court erred in not allowing the jury foreman to announce the jury's verdict as to the aggravated assault charge.

We affirm the judgment of the trial court.

Elizabeth Pewitt, the victim, is married to Dwayne Pewitt and they have three (3) children. In August 1995, the victim was separated from her husband and was living in a trailer with her children. David Pewitt is the victim's brother-in-law and was married to the Defendant. In October 1995, David Pewitt came over to perform various repair tasks at the victim's trailer. During this time, he was separated from the Defendant. This contact between David Pewitt and the victim led to a romantic involvement during which Pewitt moved into the trailer with the victim and her

children. Pewitt stayed for approximately five (5) months until the victim asked him to leave. Pewitt began living with the Defendant again at that time.

On March 11, 1996, the victim paged David Pewitt on at least two (2) occasions. The Defendant answered that page and instructed the victim, "[Y]ou had better leave us alone or you'll regret everything you done [sic]." While at a friend's house, the victim paged Pewitt again around 5:00 p.m. and he returned her call. While the victim was talking with Pewitt, she could hear the Defendant in the background screaming at Pewitt to tell the victim what she [Defendant] said. Pewitt did not tell the victim what the Defendant said, but he did agree to meet with her to talk. The victim returned home around 7:30 p.m. and began putting her children to bed.

The victim was lying in bed with her child when she heard Pewitt's car turn into her driveway. She put on her robe and went to the door. As Pewitt walked up her steps, she asked him if he was alone and he replied that he was. She then asked him why he was driving as he appeared to be "pretty drunk." Pewitt came inside and told her that he was not alone, that the Defendant and her friend Cindy were out in the car and that he was supposed to lead the victim outside for an ambush. Pewitt stated that he could not do that to the victim and she locked the door. The victim gave Pewitt a letter she had written to him and they began to hug and kiss.

The next thing the victim can recall is someone banging on her front door. She unlocked it because she did not want her door to be torn down. She saw the Defendant and Cindy outside and asked them to leave. The Defendant forced her way inside and was screaming at Pewitt to tell the victim "[I]t's over." The Defendant

repeatedly stated, "It's over, bitch. It's over, do you understand that." The victim responded that Pewitt should tell her if it was over, and Pewitt declined to say the relationship was over. The victim's four (4) year old daughter was sleeping on the couch, woke up and then began to cry. The victim took her into her bedroom and told her to stay there, that everything was okay. When she came back into the living room, the Defendant and Pewitt were standing there, with Cindy standing just outside the door. Defendant jumped onto Pewitt and hit him, causing him to fall and break a table. The victim asked her to leave, but Defendant responded that she had better leave Pewitt alone. Cindy came inside slowly and stood beside the Defendant.

Cindy hit the victim and then the Defendant began to hit her. Both of them attempted to pull the victim outside by her hair but the victim sat down. Cindy said, "Give me the knife, give me the knife, we're going to cut this bitch's hair." The Defendant agreed and handed a knife to Cindy. When they brought out the knife, Pewitt walked outside. The victim screamed, begging them to please leave and for Pewitt to help her. While the victim had her hands up trying to pull her hair away from them, they cut her hands. After the victim moved her hands, they cut her hair. Cindy said, "We're going to cut your pretty little legs up." The Defendant repeated, "Yeah, we're going to cut you up." Cindy began to cut her while the Defendant beat her.

Defendant began cutting her legs while Cindy then beat the victim. The attack continued while the victim screamed for help. Pewitt stepped back inside and pulled both women off of the victim, then said, "My God, what have you all done to her."

The victim asked him to take the women and leave. When Pewitt got up, Cindy and the Defendant both kicked the victim as they were leaving.

After the victim heard their car leave, she walked over to her neighbor's home, the Eady's, and asked for them to call 911. Eady got some towels for her legs after he called 911, and they returned to her home to check on her children. The victim was bleeding so badly that she returned outside because it was cold and she was trying to stop the bleeding. The ambulance arrived and transported her to the University Medical Center in Lebanon. She was in surgery for five (5) hours and stayed in the hospital for two (2) days. After she left the hospital, the victim stayed with her mother for one (1) week. She was in a wheelchair and had to be transferred by others from her wheelchair to the bed. The victim was unable to do anything for herself, and her husband came and helped her after she returned to her trailer. He stayed for three (3) or four (4) months. The victim displayed her scars to the jury.

Jeff Eady, next door neighbor to the victim, was in bed asleep when he and his wife heard someone banging on their front door. Eady went to the door and saw the victim walking down the porch and across their yard. Eady opened the door and turned on the light and the victim came back up the stairs. Eady could see that the victim was bleeding, so he called 911 and asked for an ambulance. The victim advised him who attacked her and Eady relayed that information to the operator at 911. Eady noticed that she was losing a lot of blood so he got some towels. They walked back to her trailer to check on her children, then they wrapped towels around her legs. The ambulance later arrived and transported the victim to the hospital.

Anthony Murray, a sergeant with the Wilson County Sheriff's Department, was working on March 11, 1996, when he received a call for a domestic type situation. He was given a description of the suspect's car and how many people were in the car. He proceeded down Coles Ferry Pike and met a vehicle matching the description. He turned around and proceeded after the car. The car's driver refused to stop until Murray passed the vehicle and stopped in the middle of the road and forced the car to stop. Cindy Mainer was driving the vehicle which belonged to the Defendant. When he got to the car and the suspects exited, he saw blood on the Defendant's hands when he put handcuffs on her. All three (3) of the suspects were intoxicated, belligerent and uncooperative. The Defendant cussed at Murray and then kicked the back glass out of his patrol car with her feet. He did not find a knife in their vehicle.

Vicky Taylor, sister to David Pewitt, had invited her brother and the Defendant to stay in her home on the evening prior to this attack. During that day, Taylor was talking with the Defendant. The Defendant was angry at the victim because she had paged Pewitt on three (3) occasions earlier that day. Defendant told Taylor that "[she] ought to go kill Beth [the victim]." Pewitt was in the other room when this occurred. Pewitt and the Defendant left Taylor's home fifteen (15) or twenty (20) minutes later and both had been drinking.

Sergeant Jason Locke was working as a detective on the night of March 11, 1996. Locke drove to the location where the suspect's vehicle was stopped. He photographed the inside of the vehicle. Locke stated that all three (3) suspects appeared to have been drinking, so he allowed some time to elapse prior to conducting his interviews. During that time, Locke went to the hospital and

photographed the victim's injuries. He also photographed the scene at the victim's residence. All these photos were exhibited to the jury. When Locke returned to the jail where the suspects were held, he interviewed the Defendant. The Defendant was read her constitutional rights and signed a waiver of those rights. After conducting an interview, Locke wrote the following statement:

> I was at work at 12 o'clock noon Monday, March 11th, 1996 when Beth Pewitt paged me on my beeper. She paged me two more times later the same day. She was wanting to talk to David, my husband. I told her she was fixing to regret everything she had ever done to me. On Monday night, David, Cindy and I were riding around drinking and I started thinking about it and got mad, and I told David we would never be happy again until I whipped her ass. We drove to Beth's trailer in Norene and David went in first to get her out so we could take her down the road and not do it at her trailer. I walked around and saw David kiss her and put his arm around her and that's when I went in and Cindy came in behind me. I kicked Beth in her chest, side, arms and head. The knife belonged to me. I don't know where it is at now. Both Cindy and I cut Beth's legs, hands, and hair. I'm not totally sure if the knife we used was mine or someone else's.

After he wrote the statement, the Defendant read the statement and signed it.

Defendant argues that the evidence is insufficient to support her conviction for especially aggravated burglary because the victim consented to the Defendant entering her home and the State failed to prove the requisite intent of entry into the victim's habitation. A person commits the offense of especially aggravated burglary by entering a habitation, without the effective consent of the property owner, with the intent to commit a felony, and the victim suffers serious bodily injury. Tenn. Code Ann. §§ 39-14-402(a)(1), -404(a).

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

In the light most favorable to the State, the evidence shows that the Defendant entered the victim's mobile home without consent of the victim in order to cause the victim serious bodily injury. While the testimony from the victim makes it clear that the front door of her home was unlocked, there is no requirement within the statute that a defendant must enter the home without consent through a "locked" door. The victim testified that she gave no consent to the Defendant to enter, but that she asked Defendant to leave the property. The Defendant nevertheless barged into the victim's home. We find there was sufficient proof from which a reasonable trier of

-8-

fact could have found the elements of especially aggravated burglary. This issue is without merit.

Defendant argues that the admission of photographs of the injuries to the victim were prejudicial and inflamed the jury. Defendant further insists that his error was plain error as pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure. These photographs showed the blood and lacerations on the legs of the victim. Defendant contends that the victim's display of the scars on her leg were sufficient to prove "serious bodily injury" as an element of especially aggravated burglary, and that these photographs only served to inflame and excite the jury.

The admissibility of photographs is left to the sound discretion of the trial court, and this court will not interfere with the trial court's exercise of that discretion absent a showing of clear abuse. State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993) (citing State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978)). To be admitted into evidence, a photograph must be relevant to an issue that the jury will decide and the probative value of the photo must outweigh any prejudicial effect that it may have upon the trier of fact. Braden, 867 S.W.2d at 758. Simply because a photograph vividly portrays the details of a gruesome crime or because the subject portrayed could be described in words does not render a relevant photograph inadmissible. Collins v. State, 506 S.W.2d 179, 185 (Tenn. Crim. App. 1973) (citations omitted).

In the case sub judice, the trial court did not abuse its discretion in admitting the photographs into evidence. In order to convict a defendant of especially aggravated burglary, the State must prove that the victim of the offense suffered

-9-

"serious bodily injury." Tenn. Code Ann. § 39-14-404(a)(2). Even if the visual demonstration of her legs in addition to the photographs was cumulative, the relevance of the photographs to depict the serious nature of the victim's bodily injuries is not diminished. While such photos may be disturbing or even gruesome to some jurors, that alone is insufficient to render these otherwise relevant photographs inadmissible. Having found no error, this issue is without merit.

The Defendant argues that she should not have been prosecuted for especially aggravated burglary as this act was merely incidental to the commission of another felony, aggravated assault. In addition, the Defendant asserts that the element of "serious bodily injury" in both the offenses of aggravated assault and especially aggravated burglary cause the consideration of both offenses to be in error and a violation of her rights against double jeopardy. Similarly, the Defendant concludes that it was "plain error" for the jury foreman to be precluded from reading the jury's verdict on the charge of aggravated assault after finding her guilty of especially aggravated burglary.

The elements of aggravated assault are that a person commits the offense if she intentionally or knowingly causes serious bodily injury to someone. Tenn. Code Ann. § 39-13-102(a)(1)(A). In order to commit the offense of especially aggravated burglary, a person must enter a building, not open to the public and without the owner's consent, with the intent to commit a felony and cause "serious bodily injury" to another person. Tenn. Code Ann. §§ 39-14-402(a)(1), -404(a). While the jury was charged on both offenses upon consideration of aggravated assault as a lesser offense, the Defendant was convicted of only one (1) offense of especially aggravated burglary. The jury was specifically instructed by the trial court that if it

found the Defendant guilty of especially aggravated burglary, then it was not to consider any other offenses included within the charge to the jury. For these reasons, the Defendant's reliance upon State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), and State v. Oller, 851 S.W.2d 841 (Tenn. Crim. App. 1992), is misplaced. In both Anthony and Oller, the defendants were indicted and convicted of a minimum of two (2) offenses, whereas in the case sub judice Defendant was only convicted of one (1) offense.

Defendant further relies upon the section of Tennessee Code Annotated which states that "[a]cts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both." Tenn. Code Ann. § 39-14-404(d). Courts have interpreted this statute to mean that if the serious bodily injury element used to establish the especially aggravated burglary offense is the same injury that is an element of an accompanying offense, the defendant may not be convicted of both the especially aggravated burglary and the accompanying offense. See Oller, 851 S.W.2d at 843; State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993). This does not apply to Defendant's one conviction in the case sub judice.

Finally, the Defendant argues that the trial court erred in not allowing the jury to announce the verdict as to its decision on the aggravated assault charge. As aggravated assault was only to be considered by the jury if the jury did not find the elements of especially aggravated burglary, then there was no error by the foreman not reading the jury's verdict on the aggravated assault charge. This issue has no merit.

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, Judge


CONCUR:



_____
GARY R. WADE, Presiding Judge


_____
L. T. LAFFERTY, Special Judge