# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 28, 2011 Session

## STATE OF TENNESSEE v. DANIEL O'SICKY

### Appeal from the Circuit Court for Cocke County
### No. 1524    Ben W. Hooper, II, Judge

---

### No. E2010-02439-CCA-R3-CD-FILED-AUGUST 5, 2011

---

The Defendant, Daniel O'Sicky, pled guilty to second degree murder, a Class A felony; especially aggravated robbery, a Class A felony; and especially aggravated burglary, a Class B felony, in exchange for concurrent sentencing, with the length of his sentences left to the discretion of the trial court. The trial court sentenced the Defendant to concurrent sentences of 25 years as a violent offender for the Class A felony offenses and 12 years as a Range I, standard offender for the Class B felony offense. In this appeal as of right, the Defendant contends that the trial court erred in setting the length of his sentences. Following our review, we conclude that the Defendant's conviction for especially aggravated burglary should be modified to reflect a conviction for aggravated burglary, a Class C felony, because his especially aggravated burglary conviction was precluded by Tennessee Code Annotated section 39-14-404(d). Because our modification of the Defendant's conviction does not affect the Defendant's sentence length pursuant to the plea agreement, we impose a concurrent sentence of 6 years for the Class C felony conviction. We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part; Reversed in Part; Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Ronald C. Newcomb, Knoxville, Tennessee, for the appellant, Daniel O'Sicky.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; James B. Dunn, District Attorney General; and William Brownlow Marsh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was initially indicted for first degree murder, especially aggravated robbery, a Class A felony, and especially aggravated burglary, a Class B felony. A guilty plea submission hearing was held on July 19, 2010. The State submitted that had the Defendant's case gone to trial, the State would have proven that on April 10, 2009, the Defendant and two juveniles killed the victim, Samuel Acuff. The Defendant and the juveniles planned to rob the victim, and when they arrived at the victim's residence, the Defendant "forced the victim's door open and pushed the victim to the floor." The Defendant, "aided by one of the juveniles[,] bound and covered the eyes of the victim and struck the victim several times in the head. The victim died of a blunt force trauma as a result of these blows. The [D]efendant carried away drugs, a firearm, a CD player, [and] property of [the victim] without [the victim's] consent."

A sentencing hearing was held on October 25, 2010, at which the Defendant's father, John O'Sicky, and the Defendant testified. Mr. O'Sicky testified that the Defendant enlisted in the military and went to Iraq for a year as a demolitions expert. He said that the Defendant had received "a couple of commendations for service in the military." He said that when the Defendant returned from Iraq, the Defendant "self-medicate[d]" and did not follow advice to seek help. Mr. O'Sicky said that he and the Defendant lost touch after the Defendant returned from Iraq but that the Defendant called him after the victim died. The Defendant told him that "something really bad happened" and asked for a ride, and he told the Defendant to turn himself in. He said that the Defendant had a 15-month-old son and that the Defendant and the child's mother were no longer together. He stated that the Defendant had made some very serious mistakes, that the Defendant had a drug abuse problem, and that the Defendant needed substance abuse rehabilitation. He said that when the Defendant is released, he would do his best to support the Defendant.

The Defendant, who was 24-years old at the time of the hearing, testified that he followed his father's advice and turned himself in after he obtained an attorney. He said that he admitted his involvement in the crime and gave a truthful statement to the police when he was questioned. He admitted that he had a substance abuse problem, that he started to use marijuana and Xanax when he was 14, and that he used drugs throughout his adult life.

The Defendant testified that he obtained a graduate equivalency diploma in 2003 and that he enlisted into the Army National Guard and was deployed to Iraq in 2006. While in Iraq, he completed "between two and three hundred missions." He said that he was discharged from duty because of his use of marijuana while in Iraq and that he ultimately received a "general discharge with honorable conditions." He admitted that in addition to marijuana, he used methamphetamine, "Hydros," and Xanax while in Iraq and that he

obtained the drugs from the Iraqi Army.  He said that while he was driving an assault vehicle in Iraq, the vehicle was blown up by an Improvised Explosive Device and that was hit with shrapnel and suffered from a concussion and a broken nose.  He said that he was given pain medication after the bombing, that he was discharged a year later, and that he still had flashbacks of the incident.  He said that his service in Iraq made his substance abuse problem worse.

The Defendant apologized to the victim's family.  He said,

It was not intentional, but it did happen, and I'm very sorry for what happened.  I'm also sorry to my family, because I've ruined two family's lives.  I apologize.

He stated that after he turned himself in, he gave a statement to the authorities but was unable to assist them in any other way.  He said that he believed he was suffering from a substance abuse problem when he committed the offense and that he had used methamphetamine the day before the incident.  He said that before he left the victim's house, he untied the victim, took the shirt off the victim's face, and saw that the victim was moving and sitting on the kitchen floor.  He said that the victim was cussing at him as he was leaving.  He said that after his involvement in the victim's death, his marriage suffered.  He said that prior to pleading guilty, he was examined by Cherokee Mental Health.  He said that his examiners only asked him whether he understood what would happen in court and whether he liked to hurt people.

On cross-examination, the Defendant acknowledged that in his statement, he only admitted hitting the victim one time.  He said that he did not hit the victim when the victim was on the floor and that someone else put the shirt over the victim's head.  He said that other than the money he initially gave the victim, he did not recover any money from the victim's residence.  He said that he took pills from the victim.

The State introduced a letter written by the victim's family.  In the letter, the family talked about the victim and the effect that his death had on their lives.  They stated that they forgave the Defendant but that they wanted him to "spend the rest of [his] life in prison."

Following the sentencing hearing, the State proposed six enhancement factors, while defense counsel proposed three mitigating factors.  The trial court rejected enhancement factors (2), (6), and (10) as they related to each of the convictions,

(2) The defendant was a leader in the commission of an offense involving two
(2) or more criminal actors;

(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great;

(10) The defendant had no hesitation about committing a crime when the risk to human life was high[.]

Tenn. Code Ann. § 40-35-114(2), (6), (10). In rejecting enhancement factor (2), the trial court stated that it would "avoid getting into that" factor because the proof did not substantiate that finding. In rejecting enhancement factors (6) and (10), the trial court found that these factors could not apply to any of the offenses because these factors were inherent in the offenses. This section of the court's findings was particularly hard to follow; however, it appears that the trial court ultimately rejected factors (6) and (10) and only applied the remaining three proposed enhancement factors in setting the length of the Defendant's sentence.

The trial court applied and gave great weight to enhancement factors (1) and (13),

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:

(C) Released on probation[.]

Tenn. Code Ann. § 40-35-114(1), (13)(C). In applying enhancement factor (1), the trial court stated that the Defendant's record of criminal behavior and convictions was extensive and substantial for his age. The trial court considered and gave some weight but "[n]ot a great deal" of weight to enhancement factor (4),

(4) A victim of the offense was particularly vulnerable because of age or physical or mental disability[.]

Tenn. Code Ann. § 40-35-114(4). In giving enhancement factor (4) little weight, the trial court stated that the victim was 68 years old.

The trial court considered but rejected mitigating factors (6) and (8),

(6) The defendant, because of youth or old age, lacked substantial judgment in committing the offense;

-4-

(8) The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor[.]

Tenn. Code Ann § 40-35-113(6), (8). In rejecting mitigating factor (6), the trial court stated that there was "nothing [in the record] to show that [the Defendant] lacked substantial judgment because of [his] youthfulness." In rejecting mitigating factor (8), the trial court stated that there was "nothing [in the record] to indicate that [the Defendant] suffered from any mental condition that would have reduced" his culpability. The trial court applied but gave little weight to proposed mitigating factor (9),

(9) The defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses[.]

Tenn. Code Ann § 40-35-113(9). In giving mitigating factor (9) little weight, the trial court noted the fact that the Defendant turned himself in and gave a statement but said that it did not know that the Defendant's statement was "totally truthful." The trial court ultimately found that the enhancement factors far outweighed the mitigating factor and sentenced the Defendant to the maximum sentence for each of his convictions.

## ANALYSIS

### I. Sentencing

The Defendant contends that the ultimate sentence imposed was "an inappropriate and excessive sentence in violation of the principles of Blakely v. Washington, [542 U.S. 296 (2004)]." The Defendant argues that the trial court "failed to give any weight to uncontested proof" that the Defendant was "suffering from a mental condition that significantly reduced his culpability." The Defendant also argues that the trial court failed to "give any weight" to the fact that the Defendant assisted the authorities and that the trial court improperly found that the Defendant was the leader in the commission of the offense. The Defendant contends that the trial court failed to provide specific reasons for its ultimate sentencing decision and failed to identify the enhancement and mitigating factors that it applied. The Defendant also contends that pursuant to Pepper v. United States, – U.S. – , 131 S. Ct. 1229 (2011), "he should be given credit for custodial mental health rehabilitation as a means to reduce his sentence." The State responds that the trial court considered the proposed enhancement and mitigating factors before imposing a sentence that was consistent with the purposes and principles of the Sentencing Act. The State further responds that the Defendant's reliance

on <u>Blakely</u> is misplaced because the Defendant was properly sentenced in accordance with the 2005 amendment to the Sentencing Act.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2005). The appealing party has the burden of showing that the imposed sentence is improper. <u>Id.</u> If review of the record reflects that the trial court properly considered all relevant factors, gave due consideration to each factor, and its findings of fact are adequately supported by the record, this court must affirm the sentence. <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Should the record fail to demonstrate the required considerations by the trial court, then appellate review of the sentence is purely de novo. <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review, the trial court must "place on the record, either orally or in writing, what enhancement and mitigating factors were considered, if any, as well as the reasons for the sentence." Tenn. Code Ann. § 40-35-210(e).

The Defendant committed this offense on April 10, 2009; therefore, he was sentenced under the 2005 revisions to the Criminal Sentencing Act. The Act provides that:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> > (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> >
> > (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2) (2006).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In conducting its de novo review with a presumption of correctness, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The Defendant's allegation that the trial court's imposition of sentence violated Blakely is misplaced because the offenses were committed after the 2005 amendment to the Sentencing Act. Furthermore, the record reflects that the trial court followed the sentencing principles and appropriately found the existence of three applicable enhancement factors. Contrary to the Defendant's assertion, the trial court did not find that the Defendant was a leader in the commission of the offense. The record shows that the trial court gave proper consideration, but little or no weight, to all of the proposed mitigating factors. Additionally, the trial court provided specific reasons for its ultimate sentencing decision and its imposition or rejection of each proposed enhancement and mitigating factor. Under the revised Sentencing Act, this court may not re-weigh the enhancing and mitigating factors provided the trial court followed the principles of sentencing. Given that the enhancement factors were supported by the record and that the trial court considered the mitigating factors as required, we conclude that the record supports the trial court's sentencing decision. Accordingly, we affirm the trial court's sentencing decision.

Although we are affirming the Defendant's sentences, we must also address the Defendant's request to compare his case with the United States Supreme Court's decision in Pepper. It is unclear whether he is asserting that this court should reduce his sentence pursuant to Pepper or whether he is asserting that the trial court should have considered his post-arrest conduct when setting the length of his sentence. Either way, his argument fails.

-7-

In Pepper, the Court considered whether a "district court may consider evidence of a defendant's rehabilitation since his prior sentencing" when his sentence had been "set aside on appeal and his case remanded for resentencing." 131 S. Ct. at 1241. The Court ultimately held that district courts "may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." Id. at 1249.

The differences between the Court's decision in Pepper and the Defendant's case are vast. The defendant in Pepper had been resentenced pursuant to the Federal Guidelines. Here, the Defendant was sentenced in a state court pursuant to Tennessee's Sentencing Act. The trial court was also not resentencing the Defendant after his case had been set aside on appeal. While the court could have considered the Defendant's rehabilitation after his arrest when setting the length of the Defendant's sentence, the Defendant did not present any evidence that he had undergone rehabilitation while awaiting sentencing. Additionally, this court may only consider whether the record supports the trial court's sentencing decision and may not consider any additional information that was not before the trial court. Accordingly, we conclude that the Defendant's reliance on Pepper is misplaced.

## II. Modification of Especially Aggravated Burglary Conviction

Pursuant to Rule 13 of the Tennessee Rules of Appellate Procedure, this court notes as a matter of plain error that the State's prosecution of the Defendant for especially aggravated burglary in addition to his prosecution for first degree murder and especially aggravated robbery was precluded by Tennessee Code Annotated section 39-14-404(d), which states that "[a]cts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both." See, e.g., State v. Oller, 851 S.W.2d 841, 843 (Tenn. Crim. App. 1992). At issue in this statutory prohibition of prosecution is the use of the same proof to enhance the conviction based upon the element of serious bodily injury. Indeed, the other charges involved in this case, first degree murder and especially aggravated robbery, included an element of serious bodily injury. See § 39-13-202(a)(1), -403(2). We do not believe that the fact that the Defendant pled guilty to the offense of second degree murder, especially aggravated robbery, and especially aggravated burglary limited the statutory prohibition of prosecution in any manner. See State v. Larry Darnnell Pinex, No. M2007-01211-CCA-R3-CD, 2008 WL 4853077, at *17 (Tenn. Crim. App. Nov. 6, 2008), perm. app. denied (Tenn. May 11, 2009) (holding that it is the prosecution for the multiple offenses based on the same proof of the bodily injury element that is prohibited by Tennessee Code Annotated section 39-14-404(d)). Therefore, the Defendant's conviction for especially aggravated burglary, a Class B felony, shall be modified to one for aggravated burglary, a Class C felony.

Our modification of the Defendant's conviction does not affect the guilty plea agreement because the Defendant agreed to plead guilty in exchange for concurrent sentencing. Cf. State v. Troy R. Walls, No. 01C01-9802-CC-00080, 1998 WL 849295, at *2 (Tenn. Crim. App. Dec. 3, 1998) (remanding the defendant's case for renewal of plea negotiations because the court's act of vacating one of the convictions affected the proposed sentence length of the plea agreement). Implicit in this agreement was the understanding that the Defendant would receive lengthier sentences for the Class A felonies. Accordingly, we impose a sentence of six years for the modified conviction because the trial court imposed the maximum sentence for each of the Defendant's other convictions. See Pinex, 2008 WL 4853077, at *17 (imposing a mid-range sentence for the modified conviction in keeping with the trial court's sentencing decision).

## CONCLUSION

In consideration of the foregoing, the judgments of the trial court are affirmed with respect to the Defendant's convictions for second degree murder and especially aggravated robbery. However, the defendant's conviction for especially aggravated burglary is precluded by statute. Therefore, we modify the judgment of conviction for especially aggravated burglary to that of aggravated burglary and impose a sentence of six years. The case is remanded for reversal of the especially aggravated burglary conviction and imposition of the aggravated burglary conviction.

_____
D. KELLY THOMAS, JR., JUDGE