# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 9, 2013

## STATE OF TENNESSEE v. MICHAEL ALLEN GIBBS

**Appeal from the Circuit Court for Haywood County**
**No. 6458A     Clayburn L. Peeples, Judge**

---

**No. W2012-00800-CCA-R3-CD  -  Filed June 26, 2013**

---

The Defendant, Michael Allen Gibbs, was convicted by a Haywood County jury of first degree felony murder, especially aggravated burglary, and attempted especially aggravated robbery. On appeal, the Defendant argues that the trial court erred by failing to give a jury instruction on accomplice testimony. Following our review of the record and the applicable authorities, we conclude that the trial court should have instructed the jury with respect to the legal status of the State's witness but that the error was harmless. However, because the Defendant's conviction for especially aggravated burglary is precluded by statute, that conviction is modified to one for aggravated burglary with imposition of a five-year sentence. We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed in Part; Reversed in Part; Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

J. Patrick Dollar, Medina, Tennessee (at trial); and J. Daniel Rogers, Medina, Tennessee (on appeal), for the appellant, Michael Allen Gibbs.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald M. Campbell and Edward Larry Hardister, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

This case arises from the August 2009 shooting death of the victim, Daniel Bradford, inside his Brownsville home. Following the victim's death, a Haywood County grand jury

charged the Defendant, along with his co-defendant Michael Batchelor, with first degree premeditated murder, first degree felony murder, especially aggravated burglary, and attempted especially aggravated robbery. Tenn. Code Ann. §§ 39-12-101, -13-202, -13-403, -14-404. The Defendant and Batchelor were tried separately; the Defendant's case proceeded to trial on September 26, 2011.

The evidence presented, in the light most favorable to the State, at trial showed that the Defendant; the co-defendant; the Defendant's girlfriend, Victoria Miller; and her friend, Angela Sangster, had gathered during the evening hours at Miller's apartment on August 28, 2009. Miller and Sangster announced to the men that they were leaving to purchase alcohol. According to Miller, the men understood that this meant a trip to the victim's house, a relative of Miller's who illegally sold liquor out of his home.

They arrived at the victim's house, and the victim answered his door wearing checkered pajama pants. The victim invited the women inside to discuss their purchase. Once inside, two men entered with bandanas covering their faces, instructing the two women to "get down" and demanding money and liquor from the victim. As the women crouched beside the bed, one of the men said that the victim had a gun, and then a gunshot was fired. The men exited. The two women left abruptly thereafter and did not check on the victim. They returned to Miller's apartment and, finding no one there, went to purchase cigarettes from a nearby convenience store. They then went to check on the victim and found him dead from a gunshot wound. Miller telephoned the police.

An investigation ensued. Brownsville Police Department officers arrived at the victim's house around midnight and discovered the victim partially nude from the waist down. According to one paramedic, the victim's body was still warm to the touch. Officers also discovered a loaded weapon underneath the victim, which had not been fired. It appeared that someone had rummaged through the victim's belongings; the house was in disarray and liquor bottles were strewn across the bed. According to Sergeant Michael Phillips, it appeared as though someone was looking for something.

In her initial statement to the officers immediately after the shooting, Miller denied being present during the shooting. Upon subsequent questioning, she admitted to being in the room when the shooting occurred. Although she could not identify either of the two men from their physical appearance, she claimed to recognize the Defendant's voice. Angela Sangster was interviewed later; she was never able to identify either individual. Both women claimed that the victim was wearing pants when they last observed him.

The Defendant, knowing the police considered him the prime suspect in the victim's murder, turned himself in. He was questioned and denied any involvement in the victim's

murder. He claimed that he was at Miller's house at the time of the shooting and only became aware of it when Miller returned home later that evening. The Defendant thereafter remained incarcerated.

Jerry Wayne Shaw testified that he was incarcerated with the Defendant while he was awaiting trial. According to Shaw, the Defendant told him that he, the co-defendant, and Miller went to the victim's house to rob him. The plan was to use the women to get inside. The Defendant relayed to Shaw that he and his co-defendant waited on the side of the house, and then when the victim opened the door, they ran in. The Defendant said to Shaw that when the victim reached "for his pants," he shot him. Shaw was told that the victim was not wearing any pants when he opened the door.

Kristopher White was also incarcerated with the Defendant. White said that the Defendant admitted to shooting the victim during a robbery. According to White, the Defendant did not believe he would be convicted of the victim's murder due to a lack of evidence. The Defendant told White that Miller and Sangster were suppose to "handle it" but were unable to go through "with getting the money," so he was "called in on the cue" and shot the victim.

Also while incarcerated, the Defendant wrote letters to Miller. In one letter, he asked for Miller's help at the preliminary hearing, noting that Miller and Sangster were the only witnesses against him.

The motion for a judgment of acquittal was denied, and the Defendant did not present any proof. After deliberating, the jury acquitted the Defendant of premeditated murder but found him Defendant guilty of the remaining charges.

Thereafter, the trial court sentenced the Defendant to life imprisonment with the possibility of parole for the felony murder conviction and to ten years each for the especially aggravated burglary and attempted especially aggravated robbery convictions. The court ordered that the ten-year sentences be served concurrently with one another but consecutively to the life sentence, for a total effective sentence of life plus ten years. This appeal followed.

ANALYSIS

On appeal, the Defendant argues that the trial court erred by failing to give a jury instruction on accomplice testimony. His argument is two-fold. First, the Defendant claims that the trial court erred by failing to instruct the jury that Miller and Sangster were accomplices as a matter of law whose testimony must be corroborated. Alternatively, he submits that, if the evidence was unclear, raising a question of fact, then the jury should have

-3-

been charged to decide whether the women were accomplices, and if so, whether there was sufficient corroborating evidence.

It is well-established in Tennessee that "a conviction may not be based solely upon the uncorroborated testimony of an accomplice." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (citing State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); Monts v. State, 379 S.W.2d 34, 43 (Tenn. 1964)). An accomplice is a person who "knowingly, voluntarily, and with common intent participates with the principal offender in the commission of the crime alleged in the charging instrument." State v. Griffis, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997) (footnote omitted). To qualify as an accomplice, it is not enough that the witness possess guilty knowledge, be morally delinquent, or even have participated in a separate but related offense. See State v. Lawson, 794 S.W .2d 363, 369 (Tenn. Crim. App. 1990). The test is whether the alleged accomplice could be indicted for the same offense with which the defendant is charged. State v. Green, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995); Pennington v. State, 478 S.W.2d 892, 897-98 (Tenn. Crim. App. 1971) (citations omitted).

This court has previously considered the issue of whether the court or the jury determines a witness's status as an accomplice:

> The question of who determines whether a witness is an accomplice depends upon the evidence introduced during the course of a trial. When the undisputed evidence clearly establishes the witness is an accomplice as a matter of law, the trial court, not the jury, must decide the issue. On the other hand, if the evidence adduced at trial is unclear, conflicts, or is subject to different inferences, the jury, as the trier of fact, is to decide if the witness was an accomplice. If the jury finds the witness was an accomplice, the jury must decide whether the evidence adduced was sufficient to corroborate the witness's testimony.

Griffis, 964 S.W.2d at 588 (footnotes omitted); see also T.P.I.—Crim. 42.09. In other words, if the evidence is clear and undisputed that a witness participated in the crime, then the trial court must declare the witness to be an accomplice as a matter of law and must instruct the jury that this witness's testimony must be corroborated. However, if the evidence is unclear, then the issue of whether a witness is an accomplice is a question of fact for the jury to decide, and if the jury decides that the witness is an accomplice, then it must determine whether there is sufficient evidence corroborating the witness's testimony. Griffis, 964 S.W.2d at 588; see Lawson, 794 S.W.2d at 369; Bethany v. State, 565 S.W.2d 900, 903 (Tenn. Crim. App. 1978).

-4-

The record is clear that Miller and Sangster disputed their status as the Defendant's willing accomplices. Both testified that they were not involved in the robbery and shooting in any way but were merely innocent bystanders at the victim's home to buy liquor. Neither claimed to know that the Defendant was going to steal from or shoot the victim prior to those very acts. Simply put, no portion of Miller's or Sangster's trial testimony can be reasonably construed as a concession that they willingly participated in the Defendant's crimes. Thus, the trial court did not err in failing to charge the jury that Miller and Sangster were the Defendant's accomplices as a matter of law whose testimony required corroboration.

However, the trial court also failed to present this factual dispute to the jury in its instructions. We agree with the Defendant that there was evidence in the record from which the jury could have inferred that Miller and Sangster were accomplices. It does not matter, as the State argues, that the issue was raised in the Defendant's self-serving statements to his fellow prisoners. What matters is that the issue was raised by the evidence and should have been submitted to the jury. Nonetheless, even when evidence exists that would support a finding that a witness is an accomplice, and the trial court fails in its duty to instruct the jury concerning accomplice testimony, such an error is subject to harmless error analysis. See State v. Ballinger, 93 S.W.3d 881, 888 (Tenn. Crim. App. 2000). We will find such an error to be harmless when "the record contains sufficient corroboration to [the accomplice's] testimony." Id.

The State presented sufficient evidence at trial to corroborate Miller's and Sangster's testimony if the jury found them to be accomplices. "[C]orroborating evidence is sufficient if it connects the accused with the crime in question." Griffis, 964 S.W.2d at 589. The Defendant confessed to robbing and shooting the victim to two different jailhouse inmates. While the details of these statements somewhat differed, he admitted to both Shaw and White that he shot the victim during a robbery. This testimony constitutes more than sufficient corroboration of the accomplice testimony in this case. See State v. Alisha J. Glisson, No. M2006-02115-CCA-R3-CD, 2008 WL 624929, at *9 (Tenn. Crim. App. Mar. 5, 2008) (while neither the accomplices' testimony nor the defendant's confession standing alone were sufficient to establish the crime, this evidence taken together, however, was sufficient to support to the defendant's conviction). Furthermore, both Miller and Sangster were vigorously cross-examined at trial about their participation in these events and the inconsistent statements they gave to the police. Consequently, any failure to properly instruct the jury concerning Miller's and Sangster's status as accomplices or the need for their testimony to be corroborated would have been harmless.

Although neither party raised the issue on appeal, we determine that the Defendant's conviction for especially aggravated burglary should be modified to aggravated burglary. "When necessary to do substantial justice, an appellate court may consider an error that has

affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b); see also Tenn. R. App. P. 13(b) (stating that the appellate court may in its discretion consider other issues not raised on appeal to prevent prejudice in the judicial process, among other reasons). Pursuant to Tennessee Code Annotated section 39-14-404(d), the Defendant's conviction of felony murder precludes his conviction of especially aggravated burglary because the act of killing the victim constituted the "serious bodily harm" element of the Defendant's especially aggravated burglary conviction.

Convictions of both especially aggravated burglary and another offense resulting from the same act is precluded by this statute, and thus, the State cannot use the same act to prosecute an accused for both especially aggravated burglary and another offense. See State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993) ("[S]ubsection (d) prohibits using the same act to prosecute for especially aggravated burglary and another offense."). The record reflects that the jury convicted the Defendant in count two of the indictment for the felony murder of Daniel Bradford and in count three of the indictment for especially aggravated burglary, in which Daniel Bradford was also the named victim. Because the specific act of killing the victim also constituted the "serious bodily injury" suffered by the victim, enhancing the burglary offense to especially aggravated burglary, "[s]ubsection (d) proscribes the prosecution and conviction for especially aggravated burglary." State v. Oller, 851 S.W.2d 841, 843 (Tenn. Crim. App. 1992); see also State v. Steven Woodrow Johnson, No. M2011-00125-CCA-R3-CD, 2011 WL 5825778, at *9-10 (Tenn. Crim. App. Sept. 7, 2012) (holding that the effect of subsection (d) is that the Defendant cannot be convicted of especially aggravated burglary and felony murder when the serious bodily injury of the victim was an element of both offenses), perm. app. denied, (Tenn. Feb. 13, 2013). When such a conviction has occurred, the proper action is to modify the conviction for especially aggravated burglary to aggravated burglary as a lesser-included offense. See Holland, 860 S.W.2d at 60; Oller, 851 S.W.2d at 843. Therefore, the Defendant's conviction for especially aggravated burglary, a Class B felony, is precluded by statute and should be modified to a conviction for aggravated burglary, a Class C felony.

At the Defendant's sentencing hearing, the trial court sentenced the Defendant to concurrent terms of ten years for the attempted especially aggravated robbery conviction and ten years for the especially aggravated burglary conviction, mid-range sentences for a Class B felony. Because the conviction for especially aggravated burglary under count three should be reduced to a conviction for aggravated burglary, we likewise must modify the Defendant's sentence to a Class C felony mid-range sentence. Accordingly, the Defendant's Class C felony sentence is modified to a term of five years. See Johnson, No. M2011-00125-CCA-R3-CD, 2011 WL 5825778, at *10 (citation omitted). Thus, we remand for

modification of the judgment form to reflect a judgment for aggravated burglary and sentence of five years on count three.

## CONCLUSION

Because the Defendant's conviction of especially aggravated burglary is precluded by statute, we conclude that the conviction of especially aggravated burglary should be modified to aggravated burglary and a five-year sentence imposed. We affirm the judgments of the trial court in all other respects.

_____
D. KELLY THOMAS, JR., JUDGE