FILED

11/14/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

September 25, 2018 Session

**STATE OF TENNESSEE v. MARTEZ DANTE SMITH**

**Appeal from the Criminal Court for Knox County**
**No. 109738, 109776          G. Scott Green, Judge**

_____

**No. E2017-02045-CCA-R3-CD**

_____

Martez Dante Smith, Defendant, pled guilty to two counts of robbery in case 109738 and to one count each of aggravated robbery, robbery, and possession of a weapon after being convicted of a felony drug offense in case 109776. Following a sentencing hearing, the trial court sentenced Defendant as a Range II multiple offender to consecutive terms of eight years in case 109738 and fourteen years in case 109776. On appeal, Defendant claims that the trial court erred in finding that he had no hesitation in committing a crime when the risk to human life was high, erred in finding him to be a dangerous offender, and erred by ordering the sentences to be served consecutively. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Mark E. Stephens, District Public Defender, and Jonathan Harwell, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Martez Dante Smith.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Charme Allen, District Attorney General; and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural Background**

The State filed a notice seeking to have Defendant sentenced as a multiple offender based on prior convictions, and on July 19, 2017, Defendant entered an open

guilty plea in case 109776 to one count each of Class B felony aggravated robbery, Class C felony robbery, and Class D felony possession of a handgun after being convicted of a felony drug offense. On August 31, 2017, Defendant entered an open guilty plea in case 109738 to two counts of Class C felony robbery based on alternative theories. The trial court ordered that a presentence report be prepared and set a sentencing hearing for September 28, 2017.

The State filed a Sentencing Memorandum asking the trial court to find that enhancement factors (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," (8) "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community," (10) "[t]he defendant had no hesitation about committing a crime when the risk to human life was high," and (16) "[t]he defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult[]" applied in determining the length of Defendant's sentence. *See* Tenn. Code Ann. § 40-35-114 (1), (8), (10), and (16). The State asked the trial court to impose consecutive sentencing based on two of the criteria listed in Tennessee Code Annotated section 40-35-115(b): (2) "[t]he defendant is an offender whose record of criminal activity is extensive" and (4) "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(2) and (4).

The Defendant filed a Sentencing Memorandum asking the trial court to impose concurrent minimum sentences.

### September 28, 2017 Sentencing Hearing

An Investigation Report was filed on September 21, 2017, one week before the sentencing hearing.

At the outset of the hearing, the State introduced a judgment of conviction in case 98457 showing that Defendant was convicted of Class C felony "attempt to possess with intent to sell less than one half gram of a schedule II controlled substance, to wit cocaine, in a drug free school zone" on December 1, 2011, and two juvenile court orders in case 87059 showing that Defendant was adjudicated delinquent for carjacking and felony possession of a weapon on March 11, 2009. Defendant introduced two letters confirming that he was employed.

- 2 -

### *Victim Impact Statements*

A written victim impact statement of the robbery victim in case 109738 was filed as an addendum on September 25, 2017. According to the statement, the victim was approached by Defendant while walking downtown. Defendant demanded her phone, and when she screamed for help, Defendant punched the victim twice in the face and she fell. Defendant grabbed her purse and ran, dragging her across the sidewalk. She "had a black swollen eye, a fractured nose, and [] received glue on [her] eyebrow to hold it together." She was treated at the emergency room, and a CT scan was performed. She was diagnosed with PTSD and depression and underwent therapy for six months. She "was terrified to walk alone in public." At the hearing, the victim also gave an unsworn oral impact statement that was consistent with her written impact statement.

Although the victim in case 109776 did not provide a written impact statement, she was allowed to present an unsworn oral statement at the hearing. She stated that Defendant followed her home and hid until she pulled into her garage and got out of her car. Defendant pointed a pistol at her head. She stated she was a single mother raising five children and that four of her children were in the living room "probably five feet away" from where she was robbed. She said that, since the assault, she had experienced one of the toughest years of her life and that she was haunted daily by the incident. She said she felt "beaten," "caged," "degraded," and "crushed" after the robbery and that the incident was mentally devastating to her.

No sworn testimony was presented.

According to the Investigation Report, Defendant pled guilty to casual exchange in Knox County General Sessions case A369699 with an October 1, 2010 offense date, and was placed on judicial diversion for eleven months and twenty-nine days. Defendant was convicted of the above-mentioned Class C felony drug offense in case 98457 and sentenced to four years' incarceration in the Tennessee Department of Correction (TDOC). As a result of this conviction, Defendant's diversion was revoked, and a judgment of conviction for casual exchange was entered on December 2, 2011. Between October 8, 2012, and September 16, 2015, Defendant received four TDOC disciplinary infractions. TDOC records indicated that Defendant was "a confirmed member of the 107 Hoover Crips." Defendant claimed that he "left the Crips gang on July 29, 2016. Defendant told the officer preparing the report that he began using marijuana when he was twelve years of age," that he "smoked [four] blunts a day" until March 2017, and that he took four ecstasy pills a day from the age of fifteen until the age of nineteen.

A "Strong-R: Pre-Sentence Report" was included with the Investigation Report. The Strong-R Report stated that Defendant began using alcohol or drugs between the

ages of fourteen to seventeen and has had a "drug use problem within the last six months." The Strong-R Report stated that Defendant had "no history of mental health outpatient counseling."

The State averred that Defendant's previous delinquency adjudication for carjacking and the felony possession of cocaine conviction were sufficient to make Defendant a Range II multiple offender.

### *Argument Concerning Enhancement and Mitigating Factors*

The State argued that Defendant had "a previous history of criminal convictions . . . in addition to those necessary to establish the appropriate range" based on a conviction for casual exchange in 2011, and that Defendant had a "previous history of criminal behavior" because he admitted that, over a fourteen-year time span, he regularly possessed and used marijuana and that he used ecstasy four times a day for four years. *See* Tenn. Code Ann. § 40-35-114(1). Defendant conceded that he had a previous casual exchange conviction in addition to the two offenses used to establish his range, but he argued that a defendant should not be punished for being honest in providing information about prior drug problems to the probation officer preparing the investigation report.

The State claimed Defendant's judicial diversion was revoked, and therefore, "before trial or sentencing, [Defendant] failed to comply with the conditions of a sentence involving release into the community." *See* Tenn. Code Ann. § 40-35-114(8). Defendant agreed that his judicial diversion had been revoked before this case arose.

The State claimed Defendant "committed two separate violent crimes on two separate dates, both in broad daylight, and involving two unrelated victims" and that he "was armed with a handgun in one instance and violently beat his victim in the other." The State asserted that this conduct showed that Defendant "had no hesitation about committing a crime when the risk to human life was high." *See* Tenn. Code Ann. § 40-35-114 (10). Defendant argued that he could not have known that the children were in the house or the location of the children in the house, and therefore, the aggravated robbery did not create a high risk to life to someone other than the victim.

The State claimed Defendant "was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute" felony possession of a weapon "if committed by an adult[.]" *See* Tenn. Code Ann. § 40-35-114(16). Defendant claimed the carjacking and possession of a weapon offenses occurred on the same day and should not be considered two separate offenses, and therefore, the two offenses were "part and parcel of the action that gave rise to the range two calculation."

Defendant filed no mitigating factors but argued that the trial court should consider the fact that Defendant pled guilty without an agreement from the State as a mitigating factor pursuant to Tennessee Code Annotated section 40-35-113(13).

### *Consecutive Sentencing Factors*

In support of the imposition of consecutive sentences, the State argued that Defendant "[wa]s an offender whose record of criminal activity [wa]s extensive." *See* Tenn. Code Ann. § 40-35-115(b)(2). The State claimed that Defendant had an extensive record of criminal activity involving the commission of violent crimes against innocent victims, possessing firearms on multiple occasions, and possessing cocaine. Defendant argued that his juvenile offenses occurred on the same day and should not be considered two separate offenses for consecutive sentencing purposes.

Next, the State argued that Defendant [wa]s a dangerous offender whose behavior indicate[d] little or no regard for human life, and [had] no hesitation about committing a crime in which the risk to human life [wa]s high[.]" *See* Tenn. Code Ann. § 40-35-115(d)(4). The State argued that Defendant violently struck one victim in the face causing serious physical and mental injury and assaulted the other victim with a firearm while her minor children were approximately five feet away. The State argued that "Defendant acknowledge[d] in the pre[-]sentence report that he was a Crips gang member at the time these offenses were committed." Defendant claimed that he could not have been aware of the location of the victim's children and that the State had not established that he was a dangerous offender under section 40-35-115(d)(4).

### *Trial Court's Oral Ruling Concerning Enhancement Factors*

The trial court found that it was undisputed that enhancement factors (1) and (8) applied to both cases. As to the robbery convictions, the court sua sponte found enhancement factors (5) and (6) applicable, stating:

> I believe that the elements of robbery do not subsume enhancement factor five or enhancement factor six. You treated her with exceptional cruelty. You not only stole her belongings, but you inflicted, in this [c]ourt's mind, what would constitute arguably serious bodily injury. Injuries that she's going to carry with her for the rest of her life by how you struck her in the commission of this robbery. So the [c]ourt finds as to the robbery conviction enhancement factors five and six are applicable.

The trial court found that enhancement factor (10) applied to the aggravated robbery conviction because Defendant "had no hesitation about committing a crime when

the risk to human life was high." *See* Tenn. Code Ann. § 40-35-114(10). The court noted that "consequences many times which are not immediately intended can flow from that conduct. For instance, one of those kids coming out and startling you and the gun goes off and somebody gets killed[,]" or "you strike [the victim of the robbery] the wrong way, she falls and hits her head, that's felony murder if she dies[,]" or "[t]hat gun goes off because you're distracted when you're robbing [the victim of the aggravated robbery], that's felony murder."

The court noted that it would give Defendant credit for pleading guilty and taking responsibility for his actions.

Summarizing its findings concerning enhancement factors, the court stated:

> So enhancement factors [(1), (5), (6), and (8)] are applicable in this [c]ourt's judgment as to the robbery conviction. Enhancement factors [(1),(8) and (10)] are applicable to the aggravated robbery. General, I'm not going to find the juvenile adjudication, I think that's part and parcel and can be argued that that's part of his criminal history and criminal behavior. But I am going to consider, [Defendant], when I impose judgment in your case the fact that even though one of these convictions adds to and makes a part of one of the elements to make you a range two offender, the [c]ourt has to consider your prior conduct when you were a juvenile and carjacking. You're using a deadly weapon at that point in time to carjack another person. You're convicted. You're released back in the community after having been adjudicated as a juvenile, and you're doing the very same thing several years later as an adult. I have to consider that when I impose sentence.

### *Allocution*

Following argument of counsel concerning consecutive sentencing, Defendant provided an allocution apologizing to the victims.

### *Pronouncement of Sentence*

At the conclusion of the sentencing hearing, the trial court noted that "[y]ou've got two families who have been significantly harmed by [Defendant's] actions [and they] will carry the scars, physical and emotional, from those actions from this point forward." The court stated that it placed the greatest significance on enhancement factor (1), "[Defendant's] prior criminal history and criminal behavior."

Based on its previous oral findings, the trial court sentenced Defendant in case 109738 to eight years as a Range II multiple offender for each count of robbery and merged count 2 into count 1.  The court sentenced Defendant in case 109776 as a Range II multiple offender to fourteen years for aggravated robbery, eight years for robbery, and eight years for possession of a weapon after being convicted of a felony drug offense.  The court merged the robbery count into the aggravated robbery count and ordered the weapons offense to be served concurrently with the aggravated robbery and robbery counts.

In ordering the sentences to be served consecutively, the court stated:

[Defendant], you are a dangerous offender.  There is no other way to describe you if I look at this record in its entirety.  You have a conviction and adjudication as a juvenile for a carjacking offense, which involved the forceful and violent taking of an automobile from another human being involving a deadly weapon.  After suffering that adjudication, you thereafter continued to violate the law culminating in not one but two violent offenses before this [c]ourt.  The [c]ourt finds that you are a dangerous offender.  The [c]ourt further finds that the sentence to be imposed is the least drastic measure that this [c]ourt can impose in order to protect society from further criminal conduct on your behalf.

Thus, Defendant received a total effective sentence of twenty-two years. Defendant now timely appeals his sentences.

## Analysis

On appeal, Defendant claims that the trial court erred in:

(1)  finding that Defendant had no hesitation in committing a crime which had a high risk to human life based on the allegation that there were children close to the victim of the aggravated robbery;

(2)  finding that Defendant was a dangerous offender based on facts other than the facts of his current offense; and

(3)  failing to make the requisite *Wilkerson* findings before concluding that Defendant was a dangerous offender and imposing consecutive sentencing.

## Standard of Review

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after "a proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). "[A]n appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts. To facilitate meaningful appellate review of a felony sentence, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2017); *Bise*, 380 S.W.3d at 706.

In determining the proper sentence, the trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and [-]114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; [and]

(7) Any statement the defendant made on the defendant's own behalf about sentencing[.]

Tenn. Code Ann. § 40-35-210(b)(1)-(7) (2017); *see State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

**Length of Sentence**

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2017).

Although the trial court should also consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2017); *see also Bise*, 380 S.W.3d at 698 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in [Tennessee Code Annotated sections 40-35]-102 and -103[.]" *Carter*, 254 S.W.3d at 346.

*Tenn. Code Ann. § 40-35-114(10).*

Defendant argues that the trial court misapplied enhancement factor (10) to the aggravated robbery conviction because (1) there was no way for him to know the victim's children were inside her home, and (2) "there is no competent evidence in the record to support the allegation that the children were five feet away."

Defendant was convicted of aggravated robbery "[a]ccomplished with a deadly weapon[.]" Tenn. Code. Ann. § 39-13-402(a)(1) (2017). Aggravated robbery accomplished with a deadly weapon includes a high risk to the life of victim being robbed as an element of the offense. *See State v. Roger Cordell Stewart*, No. 01-C-019012-CR-00342, 1991 WL 165821, at *3 (Tenn. Crim. App. Aug. 30, 1991); *see also State v. Hicks,* 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993) *and Manning v. State*, 883 S.W.2d 635, 640 (Tenn. Crim. App. 1994). Therefore, enhancement factor (10) is only applicable to aggravated robbery accomplished with a deadly weapon where there is proof that the defendant's conduct "created a high risk to the life of someone other than the victim." *State v. Trent*, 533 S.W.3d 282, 294 (Tenn. 2017); *see also Hicks*, 868 S.W.2d at 732.

Here, we agree with Defendant that there was "no competent evidence" that there was a high risk to the life of someone other than the victim, and thus, the trial court misapplied enhancement factor (10). The only "evidence" concerning the physical location of someone other than the victim came from the unsworn, oral statement of the victim in case 109776 who stated at the sentencing hearing that four of her children were in the living room "probably five feet away" from where she was robbed. That victim did not provide a written victim impact statement and Defendant was not provided an opportunity to cross-examine the victim under oath. This court has previously concluded that

> consideration of written victim impact statements pursuant to Tennessee Code Annotated[] section 40-38-205 does not violate the Confrontation Clause of the United States Constitution. Such evidence, however, must be reliable and the defendant must have a fair opportunity to rebut the statement.

*State v. Moss*, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999) (citing Tenn. Code Ann. § 40-35-209(b)). Allowing a victim, who has not provided a written victim impact statement, to make an unsworn oral statement at a sentencing hearing does not provide a defendant "a fair opportunity to rebut the statement" and therefore violated the Confrontation Clause. *See id.*

As previously stated, a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005," which the trial court did not do in this case. *Bise*, 380 S.W.3d at 706. The trial court considered the evidence from the sentencing hearing, the presentence report, the allocution by Defendant, the nature and characteristics of Defendant's conduct, and the harm caused to the victims by Defendant's conduct. The trial court found that the sentence imposed was the "least

drastic measure that this [c]ourt can impose in order to protect society from further criminal conduct" by Defendant and that Defendant "need[ed] to be some place where [he] can't hurt anybody until [he was] much older and [he had his] life figured out." The trial court considered and weighed mitigating and enhancement factors, including enhancement factors (1) and (8), which Defendant agreed were established by the proof. The record clearly establishes that the trial court imposed a sentence within the appropriate range after "a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. The trial court did not abuse its discretion in sentencing Defendant within the appropriate range for a multiple offender convicted of Class B felony aggravated robbery and Class C felony robbery. *See* Tenn. Code Ann. § 40-35-112(b)(2), (3) (2017).

## Consecutive Sentencing Standard

In *State v. Pollard*, the supreme court expanded its holding in *Bise* to trial courts' decisions regarding consecutive sentencing. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). A trial court may "impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds" listed in Tennessee Code Annotated section 40-35-115(b). *Id.* at 861. "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862 (citing Tenn. R. Crim. P. 32(c)(1)).

### *Dangerous Offender Classification*

The trial court based its decision to impose consecutive sentences *solel*y on the fourth ground: "The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4) (2017).

Defendant claims that the trial court "erred in finding Defendant was a dangerous offender based on information other than the facts of his current offenses." We disagree. The plain language of section 40-35-115(b)(4) does not limit a defendant's "behavior" only to the current offenses. Additionally, prior criminal convictions are important to determine if society needs protection from further criminal conduct. This court has previously determined that prior criminal convictions can be used to determine whether a defendant is a dangerous offender. *See State v. Oller*, 851 S.W.2d 841, 845 (Tenn. Crim. App. 1992).

Next, Defendant claims the trial court erred in failing to make the necessary *Wilkerson* findings before concluding Defendant was a dangerous offender. *See State v.*

*Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). "Because the dangerous offender classification is the most subjective [of the seven listed grounds in Section 40-35-115(b)], the record must also establish that the aggregate sentence reasonably relates to the severity of the offenses and that the total sentence is necessary for the protection of the public from further crimes by the defendant." *Pollard*, 432 S.W.3d at 863. These two additional requirements are referred to as the *Wilkerson* factors and apply only to the dangerous defendant ground codified at section 40-35-115(b)(4). *See Wilkerson*, 905 S.W.2d at 939 (Tenn. 1995), *see also Arroyo v. State*, 434 S.W.3d 555, 557 (Tenn. 2014).

During counsel's argument concerning whether Defendant was a dangerous offender, the trial court stated:

> I'm much more concerned with the fact that his track record now is that as a juvenile he brandished a weapon and carjacked a vehicle, and as an adult within a span of a week, in this [c]ourt's mind, violently attacked another human being and stole property and a week later held a gun to another person's head just a few feet away from her kids. That's what I'm much more concerned about. Tell me why that shouldn't be considered -- that person should not be considered a dangerous offender under the law.

In imposing consecutive sentencing at the conclusion of the sentencing hearing, the trial court stated:

> [Defendant], you are a dangerous offender. There is no other way to describe you if I look at this record in its entirety. You have a conviction and adjudication as a juvenile for a carjacking offense, which involved the forceful and violent taking of an automobile from another human being involving a deadly weapon. After suffering that adjudication, you thereafter continued to violate the law culminating in not one but two violent offenses before this [c]ourt. The [c]ourt finds that you are a dangerous offender. The [c]ourt further finds that the sentence to be imposed is the least drastic measure that this [c]ourt can impose in order to protect society from further criminal conduct on your behalf.

"The decision to impose consecutive sentences[,] when crimes inherently dangerous are involved[,] should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed." *Gray v. State*, 538 S.W.2d 391, 393 (Tenn.1976). The trial court identified the aggravating circumstance and specifically addressed the two *Wilkerson* factors: the severity of the offenses committed and the necessity of an extended sentence to protect

the public.  The fact that the trial court told Defendant that he was a dangerous offender immediately before making the *Wilkerson* findings does not amount to error.

We determine that there was ample support for the trial court's finding that Defendant was a dangerous offender.  For this reason, we conclude that the trial court properly imposed consecutive sentences.

## **Conclusion**

The trial court did not abuse its discretion in sentencing Defendant, and therefore, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR.,  JUDGE